THOMAS M. BURTON (035856)(518)
5820 Stoneridge Mall Road, Suite 100
Pleasanton, California 94588
(925) 484-3233
(925) 847-2001

P.O. Box 427
West Jordan, Utah 84084
(801) 556-3711
(801) 566-3711

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SAMUEL BARDIN, PATRA BARDIN<br><br>Plaintiffs,<br><br>v.<br><br>TEEN HELP, a partnership; WORLDWIDE ASSOCIATION OF SPECIALTY PROGRAMS, a corporation; RESOURCE REALIZATIONS, a corporation; R&B BILLING, a corporation; DIXIE CONTRACT SERVICES, a corporation; TEEN ESCORT SERVICES, a corporation; KEN KAY; ROBERT B. LICHFIELD; KARR FARNSWORTH; BRENT M. FACER, JAY KAY; DAVID GILCREASE, and DOES I through X, inclusive,<br><br>Defendants.<br>_____/ | **COMPLAINT FOR NEGLIGENCE; FALSE IMPRISONMENT; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; BREACH OF FIDUCIARY DUTY; and FRAUD**<br><br>JURY TRIAL DEMANDED<br><br>2 03 C V - 0 2 1 7<br><br>CASE NO. _____<br><br>JUDGE _____ DAK _____ |

Come now the plaintiffs, Samuel Bardin and Patra Bardin, and alleges as follows:

## PARTIES

1. Plaintiff Patra Bardin enrolled her son Samuel Bardin, in Defendants' alleged rehabilitation program conducted at a place Defendants called Tranquility Bay in Jamaica. Sam was there while he was a minor during the years 19__-19__. Plaintiffs are currently residents of Johnson County, Texas.

2. The Worldwide Association of Specialty Programs is a non-profit corporation organized under the laws of the State of Utah with its principal place of business in St. George, Utah, of which Karr Farnsworth is the Executive Director. It is an umbrella organization controlling and regulating all Teen Help programs. It is the alter ego of each and every other named entity defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others.

3. Teen Help is a partnership organized under the laws of the State of Utah and doing business in the State of Utah, nationally, and internationally. It is the alter ego of each and every other named

defendant, Robert B. Lichfield being its general partner, and answers to a centralized governing group of the named individual defendants. It purports to help the parents of troubled adolescents find placement in appropriate treatment centers, but, in practice, only refers such parents to its own stable of youth camps. It is the defendants' marketing arm to recruit adolescent inmates for Tranquility Bay, Paradise Cove, Casa By The Sea, and other cult camps run by some of the other defendants.

4. Dixie Contract Services is a corporation organized under the laws of the State of Utah and is doing business within in the State of Utah, nationally, and internationally. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others. It hires and directs so-called escort services to kidnap adolescent candidates from their homes, often in the middle of the night, and take them by force to Brightway Hospital for psychological screening and passport procurement before being transported abroad.

5. R & B Billing is a corporation organized under the laws of the State of Utah and is doing business within in the State of Utah, nationally, and internationally. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized

governing group of the named individual defendants, among others. It bills and collects exorbitant fees charged by the various Teen Help cult centers by misrepresenting to insurance companies that the Teen Help programs are either therapeutic or educational depending on the coverage available.

6. Resource Realizations is a corporation organized under the laws of the State of Utah and is doing business within in the State of Utah, nationally, and internationally. It is the alter ego of each and every other named defendant, being under the control of and responsible to a centralized governing group of the named individual defendants, among others. It plans and conducts the behavior modification seminars for inductees and their parents, which modifies the values and impairs the psychological health of both groups.

7. Robert B. Lichfield is an owner, partner, shareholder, or otherwise directs the conduct and activities of each and every named corporate or partnership defendant.

8. Karr Farnsworth was, at all times material, an owner, partner, shareholder, or otherwise directed the conduct and activities of each and every named corporate or partnership defendant.

9. Brent M. Facer was, at all times material, an owner, partner,

shareholder, or otherwise directed the conduct and activities of each and every named corporate or partnership defendant.

10. Jay Kay was, at all times material, the director of Jamaica Bay, and an owner, partner, shareholder, or otherwise directed the conduct and activities of each and every named corporate or partnership defendant.

11. David Gilcrease was, at all times material, a citizen of the State of Utah, and the director of Resource Realizations, Inc.  He created, directed, and implemented secret TASK seminars designed to make Sam Bardin co-dependent upon the defendants by breaking his will and controlling every waking moment of his life while he was under Defendants' control.

12. There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants Lichfield, Farnsworth, Facer, Kay, and Gilcrease, or some of them, on the one hand, and the entity defendants, whether corporate, partnership, or otherwise styled, on the other hand, such that any individuality and separateness between defendants Lichfield, Farnsworth, Facer, Kay, and Gilcrease, on the one hand, and the entity defendants, on the other hand, had ceased, and the entity defendants were and are the alter egos of the defendants Lichfield, Farnsworth, Facer, Kay, and Gilcrease such that the individual defendants

coordinated, controlled, directed, and oversaw the activities of all of the entity defendants and operated and profited from them as sole proprietorships without the requisite independent oversight or accountability of bona fide entity defendants.  Adherence to the fiction of the separate existence of the entity defendants and the named individual defendants would permit an abuse of the entity privilege and would sanction fraud and promote injustice by shielding the individual defendants from accountability to the plaintiffs and responsibility for the acts and conduct of the entity defendants, which are purposeful facades without assets, and thus unable to respond in damages for wrongdoing or liability.

13. The defendants Does I through X, inclusive, are sued under fictitious names. Their true names are unknown to the plaintiffs and will be added by amendment when ascertained.  They are, according to the plaintiffs' information and belief, jointly and severally liable for the acts and occurrences complained of.

14. Each defendant was, at all times material, the agent of each and all of the other defendants and all defendants conspired together or otherwise acted in concert in causing the acts and occurrences complained of.

## FACTS

17. Sam's father suffered a severe injury to his lumbar spine which could not be repaired and from which he could get no relief. After struggling with the unremitting pain and disability for several months, he took his own life. Shortly after this tragic event, Sam started using cocaine. Sam's mother promptly enrolled him in Tranquility Bay, represented to her as a benevolent program employing positive tactics to help reform truant young people.

18. Defendants kidnapped Sam into the program from his home in Tennessee, and sent him to "Brightway Hospital" in St. George, Utah. Brightway Hospital was not a real hospital, but a detention facility. Defendants used the pretext of hospitalization at "Brightway Hospital" to defraud Patra of her health insurer's entire $10,000 policy limits in 13 days. This insurance should have been used to diagnose and treat Sam's bi-polar personality disorder, but it was not. Instead, Defendants branded Sam a bad boy in need of their expensive and worthless tactics of intimidation and incarceration. After 13 days at Brightway, Sam was flown to Jamaica, and imprisoned at Tranquility Bay.

19. Once Sam arrived, Defendants began to heap upon him the

most sadistic and unwarranted physical and psychological abuse. This abuse was comprised of holding Sam in a steaming squalid jungle camp infested with flies, mosquitoes, scorpions, and vermin, with insufficient food.

20. The so-called case workers were untrained, unlettered, and uncredentialed natives. Personal hygiene did not exist. Ventilation was poor. Sam was unprotected from the tropical sun. Sam slept upon a mattress with no sheets and no protection from swarms of insects.

21. The psychological abuse consisted of sadistic punishment for any and every infraction of meaningless rules. The merest glance away from one's paper in class, or moving without permission could result in severe punishment such as being forced to lie on the floor for 24 hours without bathroom privileges and without letting one's chin touch the floor. Monitors everywhere deprived Sam of his personal privacy.

22. Defendants fostered and supervised irrational peer criticism. The objective was to gang up on Sam so as to tear him down, humiliate him, and crush his psyche.

23. Right and wrong ceased to exit. The only reality was whether or not Sam was working the program. On the other hand, were he to have worked the program, he would become Defendants' abject slave.

Defendants' rationale for their sadistic torture was to force the individual out of his "comfort zone" so that he would "work the program" for his own good. The instructors used coarse and foul language to intimidate Sam. Defendants tried to erase all of Sam's value structure and replace it with their own. This, they did by destroying his fixed behaviors, fixed emotions, and fixed beliefs.

24. Mercifully, Sam's mother ran out of money, and he was sent home after three and one-half months of Defendants' insanity.

## COUNT ONE

(Negligence)

25. Defendants owed Plaintiffs a duty to screen Sam in order to protect him from induction into a boorish and brutal program whose rigors might foreseeably injure him. Defendants breached their duty by failing to screen Sam out of their program and, to the contrary, by admitting him into a program which they knew, or should have known, would be detrimental to him.

26. Defendants owed Plaintiffs a duty to consult some reputable psychiatrist to determine whether or not Sam should be on medication, and not to administer medication not prescribed

27. Defendants owed Plaintiffs a duty not to induct Sam into their

program unless and until they had Sam's written informed consent.

28. Defendants owed Plaintiffs a duty not to take Sam out of the United States unless and until they had his written informed consent.

29. Defendants breached their duty by inducting Sam into their demented program, by failing to engage quality professional help, and by punishing Sam as an criminal instead addressing any specific need justifying his presence at Tranquility Bay, by using harmful and discredited mind control techniques designed to break his will instead of trying to help him recover his sobriety, by abducting him into the program and by illegally removing him from the United States against his will and without his consent.

30. Defendants' conduct proximately caused Sam personal injury and emotional distress from and after his imprisonment to date.

31. Defendants' conduct was malicious, wanton, and in reckless disregard of Sam's health, safety and welfare, by reason of which he is entitled to recover punitive damages against them.

WHEREFORE, Plaintiffs pray for judgment as hereafter stated.

## SECOND CAUSE OF ACTION

(False Imprisonment)

32. Plaintiffs incorporate by this reference paragraphs 1 through 24 as if stated in full.

33. Defendants and their agents persuaded Sam's mother to take Sam from his home in Tennessee to Jamaica against him will and without him consent. He was transported across state borders to Utah against his will and without his consent. In Utah, the defendants and their agents procured a United States passport against Sam's will and without his consent. Using the illegally procured passport, the defendants and their agents transported Sam against his will and without his consent out of the United States to the remote island of Jamaica beyond the reach of civil liberty where he was confined for over a year until he was rescued by his mother.

34. Defendants or some of them confined Sam in a filthy, shabby, putrid, pestilential compound without contact with the outside world. In doing so, the defendants falsely and fraudulently abused the process of the United States by reason of which they deprived Sam of a substantial liberty interest without due process of law.

35. Sam learned upon arrival at Tranquility Bay that his mother was unaware of Defendants' purpose and program. He sought at that time to communicate with her and to leave the program, but Defendants or their

agents censored his mail, restrained him from any contact with the outside world, and refused to permit his return home.

36. Defendants' imprisonment of Sam in violation of his rights to due process of law caused him serious and permanent emotional distress, and psychological injury.

37. Defendants' conduct was malicious, wanton and in reckless disregard of Sam's health, safety and welfare, by reason of which he is entitled to recover punitive damages.

WHEREFORE, Sam prays for judgment against Defendants as hereafter stated.

### THIRD CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

38. Plaintiffs incorporate by this reference paragraphs 1 through 24 as if stated in full.

39. Defendants deprived Sam of nutritious and wholesome food, proper sanitation, educational opportunities, exposed him to denigrating immoral and filthy conditions, subjected him to imprisonment, attempted to break his will, inflicted unjust punishment, deprived him of legal rights, kept him in isolation, deprived him of the care, comfort, support, and sustenance of his mother, all of which caused Sam personal injury and

mental and emotional distress.

40. Defendants' conduct was in reckless disregard of Sam's health, safety and welfare, by reason of which Plaintiffs are entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereafter stated.

## FOURTH CAUSE OF ACTION

(Breach of Fiduciary Duty)

41. Plaintiffs incorporate by this reference paragraphs 1 through 24 as if stated in full.

42. By seeking, and illegally obtaining physical custody of Sam from his mother, and thereafter, by placing him into a captive and abusive environment of their own making, Defendants undertook a fiduciary duty to protect Sam's health, safety and welfare.

43. Defendants, in the manner described above, breached their fiduciary duty as maternal surrogates, which proximately caused Sam to sustain pain, suffering, bodily injury and mental and emotion distress.

44. Defendants' conduct was malicious, wanton and in reckless disregard of Sam's health, safety and welfare, by reason of which he is entitled to recover punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereafter stated

## FIFTH CAUSE OF ACTION

(Fraud and Deceit)

45. Plaintiffs incorporate by this reference paragraphs 1 through 24 as if stated in full.

46. Defendants, acting jointly and severally, falsely represented in their advertising brochure that their Tranquility Bay program was an innovative and effective program for teens who were struggling in their home, school, or community. The brochure pictured an island paradise with tropical sunsets, white beaches, clean facilities, and happy youngsters "in friendly Jamaica". Defendants deliberately omitted from their advertizing the brutal, sadistic, filthy, brain washing environment that seriously injured Sam.

47. None of the defendants' representations was true, but instead all of the above stated representations were false, and were made to Sam's mother with the intent and for the purpose of causing her to pay Defendants large amounts of money, even though the cost for the services was negligible, and to place Sam into the program against his will and without his consent even though the defendants' services were

detrimental.

48. The excessive amount charged by Defendants for the privilege of confining, abusing, and warehousing Sam, was fraudulent in that it was both far in excess of the actual costs incurred for the lack of any treatment provided, and was fraudulent as well in advancing the ruse that Defendants were providing a therapeutic, social, and educational experience approximating in value the yearly tuition charged.

49. Defendants knew or should have known that Sam was bi-polar, but concealed such information from Patra so as to cause her to enroll Sam and allow them to take all of her health insurance and private funds in order to put and keep Sam at Tranquility Bay.

50. Defendants concealed from Sam's mother that Sam was receiving nothing of value from the program, and was, at worst, being brainwashed with tactics she never consented to, psychologically abused, and denied wholesome food.

51. Defendants made the aforesaid false statements and concealments knowing them to be untrue. This, they did for the purpose of getting money from Sam's mother and custody of Sam.

52. Sam's mother reasonably and justifiably relied upon Defendants' concealments, propounded falsities, and misrepresentations

of true facts in entrusting, at great sacrifice, Sam to the off-shore private prison.

53. Defendants' knowing and intentional failure to disclose material facts and their deliberate concealment and misrepresentations of material facts in order to induce Sam's placement with them in Utah and Jamaica constitute acts of fraud and deceit.

54. Defendants' conduct was malicious, wanton and in reckless disregard of Sam's health, safety and welfare, by reason of which Sam is entitled to recover punitive damages.

WHEREFORE, Plaintiff prays for judgment as follows:

FIRST CAUSE OF ACTION FOR NEGLIGENCE:

  a. Special damages according to proof.

  b. General damages according to proof

  c. Punitive damages according to proof

SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT:

  a. Special damages according to proof.

  b. General damages according to proof.

  c. Punitive damages according to proof.

THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

a. Special damages according to proof.

b. General damages according to proof.

c. Punitive damages according to proof.

FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY:

a. Special damages according to proof.

b. General damages according to proof.

c. Punitive damages according to proof.

FIFTH CAUSE OF ACTION FOR FRAUD AND DECEIT

a. Special damages according to proof.

b. General damages according to proof.

c. Punitive damages according to proof.

Dated: February 27, 2003

*Thomas M Burton/cc*

Thomas M. Burton